UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SUZANNE CASIANO,<br><br>                     Plaintiff,<br><br>        v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                     Defendant. | CASE NO. 2:15-CV-01708-TSZ-DWC<br><br>REPORT AND RECOMMENDATION<br>ON PLAINTIFF'S COMPLAINT<br><br>Noting Date:  August 12, 2016 |

The District Court has referred this action, filed pursuant to 42 U.S.C. § 405(g), to United States Magistrate Judge David W. Christel. Plaintiff seeks judicial review of the denial of Plaintiff's application for Disability Insurance Benefits ("DIB").

The Court concludes the Administrative Law Judge ("ALJ") erred by failing to properly evaluate the opinions of one examining physician and two state agency medical consultants. Therefore, the undersigned recommends the entry of an Order reversing the ALJ's decision, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings.

1                                    **PROCEDURAL & FACTUAL HISTORY**

2         On October 23, 2012, Plaintiff filed an application for DIB. *See* Dkt. 9, Administrative

3 Record ("AR") 12, 203, 205, 207.  Plaintiff alleges she became disabled on January 10, 2009,

4 due to a failed L5-S1 fusion, rheumatoid arthritis, osteoarthritis, and other physical and mental

5 conditions. AR 228, 232. Plaintiff's application was denied upon initial administrative review

6 and on reconsideration. *See* AR 78, 104. A hearing was held before an ALJ on May 6, 2014, at

7 which Plaintiff, represented by counsel, appeared and testified. *See* AR 31.

8         On June 20, 2014 the ALJ issued his decision, finding Plaintiff was not disabled within

9 the meaning of Sections 216(i) and 223(d) of the Social Security Act. AR 24. Plaintiff's request

10 for review of the ALJ's decision was denied by the Appeals Council on September 3, 2015,

11 making that decision the final decision of the Commissioner of Social Security (the

12 "Commissioner"). *See* AR 1, 20 C.F.R. § 404.981, § 416.1481. On October 29, 2015, Plaintiff

13 filed a Complaint seeking judicial review of the Commissioner's final decision. Dkt. 1.

14         Plaintiff argues the denial of benefits should be reversed and remanded for payment of

15 benefits or, in the alternative, for further proceedings, because the ALJ: (1) erred in rejecting the

16 opinions of several medical professionals; (2) erred in evaluating Plaintiff's credibility; and (3)

17 improperly found that Plaintiff could perform past relevant work or, alternatively, other work

18 that exists in significant numbers in the economy. Dkt. 11, pp. 2-19.

19                                      **STANDARD OF REVIEW**

20         Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social

21 security benefits only if the ALJ's findings are based on legal error or not supported by

22 substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

23 Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 2

1  more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable

2  mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747,

3  750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

## DISCUSSION

I.      Whether the ALJ Properly Evaluated the Medical Opinion Evidence.

**A. Standard**

The ALJ has the responsibility to determine credibility and resolve ambiguities and
conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Where
the medical evidence in the record is not conclusive, "questions of credibility and resolution of
conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 942 (9th Cir.
1982). Determining whether or not inconsistencies in the medical evidence "are material (or are
in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of
medical experts "falls within this responsibility." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169
F.3d 595, 603 (9th Cir. 1999).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted
opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d
821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v.
Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). However, "[i]n order to discount the opinion of an
examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must
set forth specific, *legitimate* reasons that are supported by substantial evidence in the record."
*Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester,* 81 F.3d at 831). The ALJ
can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting
clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d, at

725 (*citing Magallanes*, 881 F.2d at 751). In addition, the ALJ must explain why the ALJ's own

interpretations, rather than those of the doctors, are correct. *Reddick*, 157 F.3d at 725 (*citing*

*Embrey,* 849 F.2d at 421-22). The ALJ "may not reject 'significant probative evidence' without

explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent v. Heckler*,

739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir.

1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence."

*Flores*, 49 F.3d at 571.

### B.  Application of Standard

#### 1. *Raymond West, M.D.*

Dr. West examined Plaintiff on September 12, 2011. AR 408. During the evaluation,

Plaintiff described a history of a fracture of L3, L4, and L5 and associated low back surgery. AR

408. Plaintiff described lower lumbar pain radiating bilaterally to both legs, ranging from 6 to 10

on the pain scale. AR 409. Plaintiff also described left-hand osteoarthritis which has impaired her

ability to use her left hand. AR 409. On physical examination, Dr. West noted Plaintiff favored

her right side when sitting in a chair and on the examination table. AR 410. Dr. West also noted

Plaintiff exhibited difficulties performing a range of diagnostic exercises, including walking

heel-to-toe, standing on one foot, standing on toes, squatting and back bending. AR 411.

Specifically, Plaintiff demonstrated "10% of normal" squatting, reduced range of back bending,

and slow pace with apparent pain. AR 411. Plaintiff had positive bilateral straight leg raise tests,

poor left-hand grip, and was unable to jump and demonstrate shoulder joint range of motion. AR

411-12. At several points, Plaintiff cried during examination. AR 411-12.

Dr. West diagnosed Plaintiff with: painful left shoulder, status post injury; painful back,

status post injury; painful right thumb, etiology uncertain; painful right hand and wrist, etiology

uncertain; history of connective tissue disorder, exact nature uncertain; insomnia; and

depression. AR 412. As a result of these impairments, Dr. West opined Plaintiff would be able to

sit for up to four hours in an eight-hour day, provided she was in a comfortable chair and could

move about for short periods. AR 413. Dr. West further opined Plaintiff would be able to lift 15

pounds across a room occasionally, lift 10-12 pounds less frequently from room to room, would

be able to grasp and hold small light objects on an infrequent basis, and should not squat, kneel,

crawl, climb, push, or pull, except in emergencies. AR 413. Finally, Dr. West opined Plaintiff

would be able to stand no more than 20 minutes and walk no more than a mile at a time, and

could stand or walk for no more than three to four hours in an eight hour work day. AR 412.

However, in discussing Plaintiff's standing and walking limitations, Dr. West indicated "if

imaging studies become available, this opinion may require qualification." AR 412.

The ALJ gave little weight to Dr. West's opinion for the following three reasons:

> [1][Dr. West's opinion is] based on the claimant's self-reports and [2] [is] not
> consistent with the medical findings in the record as a whole. As noted above, the
> claimant's alleged limitations are not credible. [3] Dr. West notes that his opinion
> of the claimant's physical limitations may change if imaging studies become
> available. ([AR 412]). On January 20, 2014, magnetic resonance imaging showed
> no significant findings of the low back to account for the claimant's complaints of
> constant daily back pain. ([AR 591]).

AR 21 (numbering added). Plaintiff argues these were not specific and legitimate reasons for the

ALJ to give little weight to Dr. West's opinion, and the Court agrees.

First, an ALJ may discount a physician's opinion "if it is based 'to a large extent' on a

claimant's self-reports that have been properly discounted as incredible." *Tommaseti v. Astrue*,

533 F.3d 1035, 1041 (9th Cir. 2008) (*quoting Morgan*, 169 F.3d at 602). However, this is

distinguishable from a situation where the doctor provides his or her own observations in support

of the opinion. *See Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir.

1    2008) ("an ALJ does not provide clear and convincing reasons for rejecting an examining

2    physician's opinion by questioning the credibility of the patient's complaints where the doctor

3    does not discredit those complaints and supports his ultimate opinion with his own

4    observations"); *see also Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001). "When an

5    opinion is not more heavily based on a patient's self-reports than on clinical observations, there

6    is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th

7    Cir. 2014). Here, Dr. West documented Plaintiff's subjective history and experience of pain;

8    however, Dr. West also conducted a physical examination, where he noted positive straight leg

9    raise testing, reduced ability to squat, and reduced left-hand grip strength. AR 410-12. There is

10   no indication the ALJ relied "more heavily" on Plaintiff's self reports than on his own physical

11   examination findings when assessing Plaintiff's limitations. *See Ghanim*, 763 F.3d at 1162.

12   Indeed, many of Dr. West's opined limitations are, in fact, inconsistent with Plaintiff's subjective

13   reports during the examination. *Compare* AR 409 (Plaintiff reports she is unable to bend or

14   squat) *with* AR 413 (Dr. West found Plaintiff was able to bend occasionally). Thus, the ALJ's

15   finding is not supported by substantial evidence.

16        Second, the ALJ's finding that Dr. West's opinion was inconsistent with the medical

17   findings in the record as a whole is a bare, conclusory statement offered without support in the

18   record.  In order to reject the opinion of a treating or examining physician, an ALJ must do more

19   than state his or her conclusions; he or she must set forth their own interpretations and explain

20   why they, rather than the doctors', are correct. *Reddick*, 157 F.3d at 725 (*citing Embrey v.

21   Bowen,* 849 F.2d 418, 421-22 (9th Cir. 1988)). *See Garrison v. Colvin,* 759 F.3d 995, 1012 (9th

22   Cir. 2014). *See also, e.g.*, *McAllister v. Sullivan*, 888 F.2d 599, 602-03 (9th Cir. 1989) (finding

23   similar reasoning for rejecting a treating physician's opinion was "broad and vague, failing to

24

1   specify why the ALJ felt the treating physician's opinion was flawed"). To simply state Dr.

2   West's opinion is inconsistent with the medical findings in the record as a whole "does not

3   achieve the level of specificity our prior cases have required[.]" *Embrey*, 849 F.2d at 421-22.

4   Moreover, other medical findings in the record not discussed by the ALJ actually support Dr.

5   West's opinion. For example, numerous records document positive straight leg raise tests,

6   tenderness to palpitation in her low back, and difficulty moving. *See* AR 435, 439, 480, 489-90,

7   501, 506, 534, 542, 598. Plaintiff's medical records also document crepitus in her thumb,

8   reduced range of motion in her left wrist, tenderness throughout her left hand, and reduced

9   muscle strength in her left arm. *See* AR 380, 390, 394, 396, 404, 406, 453, 471, 501, 539. This is

10  precisely the sort of record support the ALJ claims Dr. West's opinion lacks.

11          Third, the ALJ indicated "Dr. West notes that his opinion of the claimant's physical

12  limitations may change if imaging studies become available." AR 21. The ALJ then cites a

13  subsequent MRI scan showing "no significant findings of the low back to account for the

14  claimant's complaints of constant daily back pain" to conclude Dr. West's opinion should be

15  afforded little weight.  AR 21. But, this finding is unsupported by substantial evidence.

16  Significantly, the ALJ does not actually cite to an MRI report, but instead cites to a SOAP[1] note

17  from Michael Curtin, D.C. which briefly mentions an MRI report. AR 21, 591. The note

18  indicates the MRI report does not contain significant findings to support Plaintiff's subjective

19  complaints of pain. But, Dr. West opined to standing and walking limitations based on more than

20  Plaintiff's subjective complaints of pain. Dr. West relied on other objective evidence, such as

21  positive straight leg raise tests, tachycardia, and the presence of a surgical scar on Plaintiff's

22  _____

23          [1] SOAP is an acronym for "Subjective, Objective, Assessment, and Plan." *Balla v. Idaho State Bd. of Correction*, 119 F.Supp.3d 1271, 1279 (D. Id. 2015). SOAP notes track clinical

24  progress in a patient. *See Marsh v. Colvin*, 792 F.3d 1170, 1171 (9th Cir. 2015).

1  lumbar spine. AR 412. The SOAP note, in short, does not undermine the objective evidence

2  supporting Dr. West's standing and walking limitations. In any event, even if the ALJ properly

3  discounted Dr. West's standing and walking limitations based on Dr. West's indication that these

4  limitations "may require qualification," Dr. West did not similarly qualify his opined sitting,

5  lifting, carrying, postural, and manipulative limitations. *See* AR 412-13.

6  　　　　Because the ALJ did not offer a specific and legitimate reason, supported by substantial

7  evidence, for giving Dr. West's opinion little weight, the ALJ erred. Further, the ALJ's RFC

8  finding includes less restrictive standing, sitting, and lifting limitations than those opined to by

9  Dr. West. *Compare* AR 17 *with* AR 412-13. Thus, the error is not "inconsequential to the

10  ultimate nondisability determination," but is harmful error requiring remand. *Molina v. Astrue*

11  674 F.3d 1104, 1117 (9th Cir. 2012).

12  　　　　　　　　　　2. *Sorin Rhone, M.D.*

13  　　　　Dr. Rhone examined Plaintiff on February 21, 2013. AR 500. During Dr. Rhone's

14  evaluation, Plaintiff relayed a history including a fractured first vertebra due to a motor vehicle

15  accident, AC joint separation surgical repair in 2004, a L4-5 Fusion in 2008, and an open

16  reduction of a fractured wrist. AR 500. On examination, Dr. Rhone documented blood pressure

17  of 160/100, reduced left arm strength and reduced range of motion in her wrist, left knee, and

18  spine. AR 501. Dr. Rhone also observed flattening of Plaintiff's lumbosacral lordosis. AR 501.

19  Dr. Rhone diagnosed Plaintiff with status-post fusion of L4-5, arterial hypertension, bronchial

20  asthma, polyarthritic pain with recurrent arthralgia involving major joints and persistent

21  arthralgia in the lower back, and osteoarthritis. As a result of these conditions, Dr. Rhone opined

22  Plaintiff had "some limitations with her left hand at the present time because of trouble with her

23  wrist." AR 502. Dr. Rhone further opined Plaintiff could occasionally sit, stand, and walk short

24

1  distances within the confines of an apartment or an office, but Plaintiff could never climb, twist,

2  bend, stoop, squat, kneel, crawl, reach and work above shoulders. AR 502. Finally, Dr. Rhone

3  opined Plaintiff could seldom handle 10 pounds, lift, carry, push, and pull by using her right

4  hand. AR 502.

5      The ALJ discussed Dr. Rhone's opinion in the same section as Dr. West, and gave Dr.

6  Rhone's opinion little weight for two of the same reasons:

7      [1][Dr. Rhone's opinion is] based on the claimant's self-reports and [2] [is] not
       consistent with the medical findings in the record as a whole. As noted above, the
8      claimant's alleged limitations are not credible.

9  AR 21 (numbering added). The ALJ also gave a third reason unique to Dr. Rhone:

10     [3] Dr. Rhone reports that, among other things, the claimant could never reach
       ([AR 502]). Yet, the claimant reaches in her daily activities, which include
11     cooking, driving, and providing care for her three children ([AR 417]). In
       December 2010, the claimant was noted to lift her children constantly ([AR 393]).
12
   AR 21 (numbering added).

13
        As with Dr. West, the ALJ's first two reasons for giving Dr. Rhone's opinion less weight
14
   are not specific and legitimate reasons supported by substantial evidence. Dr. Rhone conducted a
15
   review of Plaintiff's medical records and performed a physical examination. AR 500-01. During
16
   his examination, Dr. Rhone documented reduced range of motion in Plaintiff's left wrist and
17
   knee, noted reduced grip strength and flattening of her lumbosacral lordosis. AR 401. Further,
18
   Dr. Rhone indicated he based his opined limitations on these objective findings. AR 502. There
19
   is no indication the ALJ relied more heavily on Plaintiff's self reports than on objective findings
20
   from his clinical examination. *See Ghanim*, 763 F.3d at 1162. Likewise, the ALJ's conclusion
21
   Dr. Rhone's opinion is unsupported by the medical evidence in the record as a whole lacks the
22
   requisite specificity to explain why the ALJ found Dr. Rhone's opinion to be flawed. *See*
23

24

1  *Reddick*, 157 F.3d at 725 (*citing Embrey,* 849 F.2d at 421-22); *Garrison v. Colvin,* 759 F.3d at

2  1012.

3  However, the ALJ's third reason for discounting Dr. Rhone's opinion, inconsistency

4  between Plaintiff's daily activities and ability to reach, is a specific and legitimate reason

5  supported by substantial evidence. Dr. Rhone opined Plaintiff could never reach. AR 421. But,

6  the ALJ cites several items in the record which indicate Plaintiff's self-described daily

7  activities—such as cooking, driving, and performing general child care—involve at least some

8  degree of reaching. AR 393, 417. The ALJ properly relied on this inconsistency to discount Dr.

9  Rhone's opinion. *See Morgan,* 169 F.3d at 600-02.

10  Plaintiff argues the ALJ misread Dr. Rhone's opinion. Dr. Rhone opined Plaintiff "can

11  never climb, twist, bend, stoop, squat, kneel, crawl, reach and work above shoulders." AR 502.

12  Plaintiff argues the absence of a serial comma between the word "reach" and the phrase "and

13  work above shoulders" necessarily means Dr. Rhone opined Plaintiff could not reach above her

14  shoulders, but was otherwise able to reach in other directions. Even assuming Plaintiff's

15  interpretation of Dr. Rhone's opinion is valid, it would still be rational to interpret the phrase

16  "reach and work above shoulders," in the context of a larger list of limitations, as two separate

17  limitations. *See* Bryan Garner, The Redbook: A Manual on Legal Style, 4 (2d ed. 2006) ("The

18  serial comma is never incorrect, but omitting it sometimes results in awkwardness, a miscue, or

19  even ambiguity."). "Where the evidence is susceptible to more than one rational interpretation,

20  one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v.*

21  *Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

22  Plaintiff also argues the ALJ's interpretation of Dr. Rhone's opinion is materially

23  inconsistent. Dr. Rhone concluded Plaintiff retained some capacity to lift, carry, push, and pull

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 10

using her right hand. AR 502.  Plaintiff argues Dr. Rhone could not have meant Plaintiff was

entirely unable to reach, as lifting, carrying, pushing, and pulling require reaching. Thus, Dr.

Rhone's opinion should be read as only restricting Plaintiff's ability to reach above shoulders.

Dkt. 9, p. 11. However, under Program Operations Manual System ("POMS") § DI 25001.001,

"Medical Vocational Quick Reference Guide," reaching is distinct from lifting, pushing, pulling,

and carrying. POMS defines "reaching" as "[e]xtending the hands and arms in any direction."

POMS § DI 25001.001(64).  Pulling, by contrast, is defined as "[e]xerting force upon an object

so that the object moves toward the force." POMS § DI 25001.001(61). *See also* POMS § DI

25001.001(62) (Pushing is defined as "[e]xerting force upon an object so that the object moves

away from the force.") POMS § DI 25001.001(43) (Lifting is defined as "[r]aising or lowering

an object from one level to another. Includes upward pulling."); POMS § DI 25001.001(8)

(Carrying is defined as "[t]ransporting an object; usually holding it in the hands, arms, or on the

shoulder."). Notably, none of these definitions require or include an ability to "reach." Further,

Social Security Ruling ("SSR") 96-8P classifies "lifting, carrying, pushing, and pulling" as

exertional limitation, but classifies "reaching" as a separate, *manipulative* limitation. *See* SSR

96-8P, *available at* 1996 WL 374184, at *5-*6. Thus, "reaching" is an activity distinct from

lifting, pushing, pulling, and carrying, as those terms are defined by the Social Security

Administration. Plaintiff has not demonstrated how the ALJ's interpretation of Dr. Rhone's

opinion is inconsistent. *See Thomas*, 278 F.3d at 954.

     Because the ALJ offered a specific and legitimate reason, supported by substantial

evidence, for giving Dr. Rhone's opinion less weight, the ALJ did not err.

3. *Michael Brown, Ph.D. and Carla van Dam, Ph.D.*

Two state agency medical consultants reviewed Plaintiff's medical records and rendered opinions on Plaintiff's residual functional capacity. Dr. Brown opined Plaintiff was moderately limited in her ability to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms; and perform at a consistent pace without an unreasonable number and length of rest periods. AR 88. Dr. Brown further explained: "[Plaintiff's] mental health limits reduce extended periods of concentration, impacting detailed tasks, [symptoms] may reduce daily attendance. However [Plaintiff] can persist the majority [of] the time." AR 88.

As part of Plaintiff's request for reconsideration of the denial of her initial application for benefits, Dr. van Dam reviewed Plaintiff's records and opined Plaintiff was moderately limited in her ability to: maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms; and perform at a consistent pace without an unreasonable number and length of rest periods. AR 100-01. As with Dr. Brown, however, Dr. van Dam further explained: "[Plaintiff's] mental health limits reduce extended periods of concentration, impacting detailed tasks, [symptoms] may reduce daily attendance. However [Plaintiff] can persist the majority [of] the time." AR 100.

The ALJ found Dr. van Dam's psychiatric review technique ("PRT")[2] analysis to be "persuasive." AR 16. *See also* AR 22 (finding Dr. van Dam's evaluation was persuasive in the

---

[2] At Step Two of the sequential evaluation, Social Security Regulations require all those who review an application for disability to assess the severity of mental impairments in

context of assessing Plaintiff's residual functional capacity). By contrast, the ALJ discounted Dr. Brown's PRT analysis, to the extent Dr. Brown found Plaintiff had moderate limitations in maintaining social functioning. AR 16.  However, the ALJ did not discuss Dr. Brown's PRT analysis as to Plaintiff's moderate limitations in concentration, persistence and pace, nor did the ALJ address either Dr. Brown or Dr. van Dam's RFC findings. AR 16. Plaintiff argues the ALJ erred by failing to properly evaluate all of Dr. Brown and Dr. van Dam's opined limitations. The Court agrees.

An ALJ is not required to adopt an opinion from an acceptable medical source; however, in order to reject all or part of a medical opinion, an ALJ must offer at least a specific and legitimate reason for doing so. *See Nguyen*, 100 F.3d at 1466 (*citing Lester,* 81 F.3d at 831). *See also Flores*, 49 F.3d at 571 (an ALJ "may not reject 'significant probative evidence' without explanation."). An ALJ errs by purporting to give great weight to a physician's opinion, yet failing to include all of the physician's opined limitations in the RFC. *See Betts v. Colvin*, 531 Fed.Appx. 799, 800 (9th Cir. 2013) (finding the ALJ committed reversible error by purporting to give great weight to an examining physician, yet failing to include many of the physician's opined limitations in the RFC). Here, though the ALJ found Dr. van Dam's PRT analysis "persuasive," the ALJ failed to offer any reason for disregarding Dr. van Dam's RFC findings, such as moderate limitations in Plaintiff's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace

---

compliance with the psychiatric review technique articulated in 20 C.F.R. § 404.1520a. "Specifically, the reviewer must determine whether an application has a medically determinable impairment . . . rate the degree of functional limitation for four functional areas . . . determine the severity of the mental impairment (in part based on the degree of functional limitation) . . . and then, if the impairment is severe, proceed to step three of the disability analysis . . . ." *Keyser v. Comm'r, Soc. Sec. Admin.*, 648 F.3d 721, 726 (9th Cir. 2011).

1  without an unreasonable number and length of rest periods. AR 100. Also, while the ALJ

2  discounted parts of Dr. Brown's opinion, the ALJ did so by specifically focusing on Dr. Brown's

3  opinions as to Plaintiff's social functioning; the ALJ failed to address Dr. Brown's opined

4  limitations as to Plaintiff's concentration and persistence. *Cf. Dale v. Colvin*, ___ F.3d. ___,

5  2016 WL 2909237, at *3-*4 (9th Cir. 2016) (holding an ALJ erred by dividing the opinion of an

6  other medical source into two parts, but only offering germane reasons to discount one of the two

7  parts of the other medical source's opinion).

8          Both Dr. Brown and Dr. van Dam opined Plaintiff's moderate limitations would reduce

9  extended periods of concentration and might reduce her daily attendance. AR 88, 100. The ALJ's

10  failure to incorporate these limitations into the RFC finding, or otherwise provide specific and

11  legitimate reasons for rejecting these limitations, renders the ALJ's RFC finding incomplete and

12  unsupported by substantial evidence. *See Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012);

13  *Betts*, 531 Fed.Appx. at 800.

14          Defendant argues the ALJ did not err because the RFC finding was "consistent" with Dr.

15  Brown's and Dr. van Dam's opinions. *See Turner v. Comm'r of Soc. Sec*, 613 F.3d 1217, 1222-

16  23 (9th Cir. 2010). However, the ALJ's RFC finding does not include any limitations which

17  would account for Dr. Brown and Dr. Van Dam's opinions concerning Plaintiff's reduced

18  attendance, or inability to complete a normal workday or week without interruption from

19  psychologically based symptoms. Thus, the ALJ's RFC finding was not consistent with Dr.

20  Brown and Dr. van Dam's opinion, and the ALJ's failure to provide specific and legitimate

21  reasons for discounting their opinions was harmful error.

22

23

24

1                           4. *Medea Karr, ARNP*

2          Ms. Karr was Plaintiff's treating nurse practitioner. *See* AR 533-44. She prepared an

3   opinion letter in support of Plaintiff's application for disability benefits. *See* AR 566. Ms. Karr

4   opined Plaintiff was unable to repetitively lift, carry, or handle objects because of unpredictable

5   contractures in her left hand. AR 566. Ms. Karr further opined Plaintiff could sit for up to 20

6   minutes at a time, stand in a stationary position for 15 to 20 minutes, and could walk for 4-5

7   minutes before experiencing pain. AR 566. In Ms. Karr's opinion, should Plaintiff attempt to

8   exceed these limitations, she would experience a severe pain flare which could incapacitate her

9   for several days. AR 566. Ultimately, Ms. Karr "[could] not envision an environment in which

10  [Plaintiff] could work fulltime." AR 566.

11         Nurse Practitioners are considered "other sources," rather than "acceptable medical

12  sources" under Social Security regulations. *See* 20 C.F.R. §§ 404.1513(d)(1) & (3). Thus, the

13  ALJ only needs to provide arguably germane reasons to reject their testimony. *Turner,* 613 F.3d

14  at 1224; *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Here, the ALJ gave Ms. Karr's

15  opinions little weight for the following two reasons:

16              [1] The notes rely on the claimant's own subjective perceptions and she is not
                fully credible in her allegations, as noted above. [2] The limitations suggested are
17              also inconsistent with the clinical findings in the record as a whole. For instance,
                the nurse practitioner states that the claimant could walk for only four or five
18              minutes before needing to stop and that if she exceeds such limits, the claimant
                usually has pain flare up for days afterwards that "cause her to stay in bed most of
19              the day with hot packs and/or ice packs and very limited movement." ([AR 566]).
                Yet, Dr. Lemberg reports that the claimant could walk for 20 minutes (AR 497]).
20              On December 23, 2013, the claimant exercised for 11 minutes and 11 seconds of
                the Bruce protocol on a treadmill. This is with increasing speed and elevation of
21              the treadmill ([AR 580-81]). The examining physician reports that the claimant
                demonstrated "excellent functional capacity for an active individual this age." She
22              also had a normal echo Doppler study and no ischemia. Significantly, the
                physician notes that all segments of the heart tracing are normal and that the
23              claimant's estimated right ventricular ejection fraction post exercise is 65 to 70

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 15

percent ([AR 581]). At the May 6, 2014, hearing, the claimant testified that her back becomes painful when she drives for more than 20 minutes.

AR 21 (numbering added). Plaintiff argues these were not germane reasons to reject the opinion of an other medical source.

As with Dr. West and Dr. Rhone, the ALJ's conclusion Ms. Karr relied upon Plaintiff's subjective symptom testimony rather than her own independent examination is not supported by substantial evidence in the record. *See* AR 554-64. *See also Ghanim*, 763 F.3d at 1162. However, the ALJ's other reason for discounting Ms. Karr's opinion—inconsistency with clinical findings in the record as a whole—is a germane reason for discounting Ms. Karr's opinion. In rejecting lay testimony, the ALJ need not cite to the specific record as long as "arguably germane reasons" for dismissing the testimony are noted and substantial evidence supports the ALJ's decision. *Lewis*, 236 F.3d at 512. Moreover, the ALJ did, in fact, cite specific items in the record which contradict Ms. Karr's opinion. For example, though Ms. Karr opined Plaintiff would be unable to walk for more than four or five minutes, Plaintiff had reported to another physician her ability to walk up to 20 minutes at a time. AR 497. This was a germane reason to discount Ms. Karr's opinion.

II.     Other Alleged Errors.

Plaintiff also alleges several other errors in the ALJ's decision. Specifically, the Plaintiff alleges the ALJ erred in assessing her subjective symptom testimony, erred in finding Plaintiff could perform her past relevant work, and erred in finding Plaintiff could perform other work which exists in significant numbers in the national economy. The ALJ will necessarily have to reconsider these issues due to the harmful errors in evaluating the medical opinion evidence discussed above. Therefore, the Court need not address these allegations in great detail.

### A.  Plaintiff's Subjective Symptom Testimony

If an ALJ finds a claimant has a medically determinable impairment which reasonably could be expected to cause the claimant's symptoms, and there is no evidence of malingering, the ALJ may reject the claimant's testimony only "by offering specific, clear and convincing reasons." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (*citing Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993)). *See also Reddick*, 157 F.3d at 722. However, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*citing Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971); *Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980)). Where more than one rational interpretation concerning a plaintiff's testimony can be drawn from substantial evidence in the record, a district court may not second-guess the ALJ's determinations. *Fair v. Bowen,* 885 F.2d 597, 604 (9th Cir. 1989). *See also Thomas*, 278 F.3d at 954. In addition, the Court may not reverse a subjective symptom testimony determination where that determination is based on contradictory or ambiguous evidence. *See Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

Here, the ALJ reasonably considered the degree to which the objective medical evidence supported her testimony, as well as Plaintiff's activities of daily living, which the ALJ found were inconsistent with Plaintiff's testimony she had severe limitations in her ability to sit and stand, and was unable to even hold a pen or pencil to write. AR 18-19. *Carmickle*, 533 F.3d at 1161 (*citing Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)); *Molina*, 674 F.3d at 1113. However, the ALJ also improperly relied on Plaintiff's receipt of unemployment benefits and her

sporadic work history to discount her testimony. The record does not indicate whether Plaintiff asserted she was capable of full-time, rather than merely part-time, work, in her applications for unemployment benefits. *See Carmickle*, 533 F.3d at 1161-62 (where the record "does not establish whether [the claimant] held himself out as available for full-time or part-time work," such a "basis for the ALJ's credibility finding is not supported by substantial evidence," as "[o]nly the former is inconsistent with his disability allegations"). Further, while a lack of motivation to work may be a clear and convincing reason to discount a claimant's subjective symptom testimony, the ALJ's conclusion here was unsupported by substantial evidence. *Thomas v. Barnhart*, 278 F.3d. 947, 959 (9th Cir. 2002). The ALJ's conclusion, based on the fact Plaintiff had previously stayed home to care for her young children and left work in the ninth month of pregnancy Plaintiff lacked motivation to work, was purely speculative. *See* SSR 86-8, *available at* 1986 WL 68636, at *8. Finally, an evaluation of a claimant's testimony relies, in part, on an accurate assessment of the medical opinion evidence. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c). As this case must be remanded for further proceedings in any event, the ALJ should also reevaluate Plaintiff's subjective symptom testimony on remand.

## B.  Step Four and Step Five Analysis

Plaintiff argues the ALJ improperly relied on vocational expert testimony which deviated from the Dictionary of Occupational Titles ("DOT") to conclude Plaintiff could not perform her past relevant work, or other work existing in significant numbers in the national economy. Specifically, Plaintiff argues her past relevant work, as well as the other jobs opined to by the vocational expert, all required at least General Educational Development Reasoning Level Two or above. Plaintiff argues Level Two reasoning is incompatible with the restriction to "simple tasks" contained in the RFC. Defendant contends any error at Step Four or Step Five was

1  harmless, because the Ninth Circuit has suggested "an RFC limitation to 'simple' or 'repetitive'

2  tasks is consistent with Level Two reasoning." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d

3  996, 1003-04, n.6 (9th Cir. 2015).

4       The Court is persuaded by the Ninth Circuit's *dicta* in *Rounds*, and agrees with

5  Defendant that the "Library Page" position[3] is consistent with a restriction to "simple tasks."

6  Regardless of whether the ALJ erred at Step Four and Step Five, however, the ALJ erred in

7  assessing the medical opinions from Dr. West, Dr. Brown, and Dr. van Dam. An ALJ's failure to

8  properly evaluate all of the medical opinion evidence may result in a flawed RFC finding. *See*

9  *Hill*, 698 F.3d at 1162; SSR 96-8-p, 1996 WL 374184 at *2. Thus, on remand, the ALJ will

10  necessarily have to reconsider Plaintiff's RFC, and proceed on to Step Four and Step Five, as

11  appropriate.

12       **<u>CONCLUSION</u>**

13       Based on the above stated reasons and the relevant record, the undersigned recommends

14  this matter be reversed and remanded, pursuant to sentence four of 42 U.S.C. § 405(g), for

15  further proceedings consistent with this Report and Recommendation. The undersigned also

16  recommends judgment be entered for Plaintiff and the case closed.

17       Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

18  fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

19  6. Failure to file objections will result in a waiver of those objections for purposes of de novo

20  review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

21  _____

22     [3] The Vocational Expert testified Plaintiff would be able to perform the position of
"Library Page," DOT 249.687-014. AR 69. The Library Page position is classified as light work,

23  with Level Two reasoning. AR 69. The Vocational Expert further testified there are
approximately 115,000 Library Page positions available in the national economy, and

24  approximately 3,000 of those positions are in Washington State. AR 69.

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 19

1 | imposed by Rule 72(b), the clerk is directed to set the matter for consideration on August 12,

2 | 2016, as noted in the caption.

3 |        Dated this 26th day of July, 2016.

4 |

5 |                                              David W. Christel
                                                 United States Magistrate Judge
6 |

7 |

8 |

9 |

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 20